**Robert Franklin GODFREY, Petitioner,**

v.

**Robert FRANCIS, Warden, Georgia Diagnostic & Classification Center, Respondent.**

**Civ. A. No. C84–354R.**

United States District Court, N.D. Georgia, Rome Division.

June 28, 1985.

Ellen Kreitzberg, Gerald I. Fisher, Washington, D.C., for petitioner.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

HAROLD L. MURPHY, District Judge.

### I. FACTUAL BACKGROUND

This is a death penalty case. On March 9, 1978, a jury in the Superior Court of Polk County found Robert Godfrey guilty of two counts of murder[1] and sentenced him to death.

Based on the evidence adduced at trial the jury was authorized to find that in

---

1. He was also found guilty on one count of    aggravated assault.

September of 1977 Godfrey was estranged from his wife. At the time of the shootings she was living in a trailer with her mother and daughter. The trailer was located within one hundred yards from Godfrey's.

On September 20, 1977, the day before a court hearing was supposed to take place on the divorce proceedings filed by Mrs. Godfrey, Robert Godfrey telephoned his wife twice to discuss the possibility of reconciliation. After the second rejection, Godfrey, who had a previous history of alchol-related problems, became quite despondent. He went to a closet, got out a shotgun, loaded it, and walked up to the trailer where his wife was staying. His wife and mother-in-law were in the kitchen playing cards. Godfrey fired once through a rear window killing his wife instantly. He then entered the trailer, striking his daughter with the butt of the gun. Then he fired once more killing his mother-in-law.

Immediately after the shootings Godfrey telephoned the police from the trailer to tell them where he was and what he had done. He then exited from the trailer, placed his gun in a tree, and sat down to wait for the police to arrive. When the police came Godfrey was arrested without incident.

## II. PROCEDURAL HISTORY

Following his conviction and sentencing, Godfrey appealed to the Georgia Supreme Court. On direct review the court affirmed his conviction and sentence. *Godfrey v. State,* 243 Ga. 302, 253 S.E.2d 710 (1979). The United States Supreme Court granted certiorari and vacated Godfrey's death sentence. *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The Georgia Supreme Court remanded for resentencing. A second sentencing trial was held in the Superior Court of Polk County. Again, Godfrey was sentenced to death. The sentence was affirmed on direct review. *Godfrey v. State,* 248 Ga. 616, 284 S.E.2d 422 (1981), *cert. denied* 456 U.S. 919, 102 S.Ct. 1778, 72 L.Ed.2d 180 (1982). Godfrey initiated habeas proceedings in the

Superior Court of Butts County. Relief was denied. That decision was affirmed by the Georgia Supreme Court. *Godfrey v. Francis,* 251 Ga. 652, 308 S.E.2d 806 (1983). After denial of a petition for writ of certiorari in the United States Supreme Court, Godfrey filed a petition for a writ of habeas corpus in this Court.

## III. *SANDSTROM*

■ Petitioner argues that at the guilt-innocence phase of the trial, the court's charge on intent impermissibly shifted the burden of proof in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The state responds that when the charge is read as a whole no *Sandstrom* error can be found to have occurred.

The relevant portion of the instruction reads as follows:

The object of all legal investigations is the discovery of the truth. Rules of evidence are framed with a view to this prominent end seeking always for pure sources and the highest evidence. A crime is a violation of a statute of this state in which there shall be a union or joint operation of acts or omission to act and intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is you the jury, may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Every person is presumed to be of sound mind and discretion but the presumption may be rebutted.

The defendant has put in evidence which indicates he was insane at the time of the crime. If this creates in your

mind a reasonable doubt as to his sanity the legal presumption of sanity is rebutted and the prosecution must remove that doubt and prove the sanity of the defendant beyond a reasonable doubt. (TR at 545–46).

In *Francis v. Franklin,* — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Court conducted a *Sandstrom* review of a nearly identical charge.[2] The *Franklin* Court found that the sentences: "The acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted," and "A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted," could reasonably have been understood by a juror to create a mandatory rebuttable presumption. *Id.* at 1972–73. The identical sentences appear in the instant charge.

Clearly, however, instructions may not be considered in a vacuum. They must be viewed within the context of the entire charge. *Patterson v. Austin,* 728 F.2d 1389 (11th Cir.1984). In this regard, the *Franklin* Court held that the infirmity of this language was not cured by instructions on presumption of innocence, reasonable doubt, nor the charge that "a person will not be presumed to act with criminal intention...." *Id.* 105 S.Ct. at 1974.[3] After a careful review of the instant charge in toto, the Court sees no other aspect of the instructions, either by virtue of other specific instructions or the organization or phraseology of the charge as a whole, as cleansing the offensive language of its constitutional infirmity.

Thus, as in *Franklin,* the Court finds that this language "undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent." *Id.* at 1973. A finding that the instruction was unconstitutionally burden-shifting, however, only concludes the first stage of the analysis. It must next be determined whether the error was harmful.

■ The Supreme Court has not resolved the issue of whether *Sandstrom* errors are per se harmful. *See Francis v. Franklin,* — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). In this circuit, *Sandstrom* errors may be deemed harmless in two instances: if the evidence of guilt was overwhelming and if the offending instruction was applied to an element of the crime not at issue at trial. *Davis v. Kemp,* 752 F.2d 1515, 1521 (11th Cir.1985). In other words, as to the second instance, the *Sandstrom* violation may be deemed harmless if defendant does not raise lack of intent as a defense, such as where the defense rests on noninvolvement. *McClesky v. Kemp,* 753 F.2d 877 (11th Cir.1985).

Here, Godfrey's sole defense was premised on insanity. He did not deny commit-

---

**2.** The *Franklin* Court reviewed the following charge:

"A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other cir-

cumstances connected with the act for which the accused is prosecuted." App. 8a–9a. *Franklin, supra,* 105 S.Ct. at 1969–70.

**3.** In terms of a Sandstrom error being cured by other instructions, the Court finds the charge in this case easily distinguished from that in *Potts. Potts v. Zant,* 734 F.2d 526 (11th Cir.1984). In the first place, the *Potts* court did not deem the language found offensive in *Franklin* to necessarily constitute a *Sandstrom* violation. Therefore, it would appear that *Potts* has been implicitly overruled. Furthermore, the *Potts* court emphasized the extent to which other portions of the charge set forth where the burden of proving intent lay and how the instructions on insanity diluted the impact of the challenged language. No such curative instructions can be found in the instant charge.

ting the acts of which he is accused. Rather, his defense was that the events· surrounding the dissolution of his marriage pushed him into a dissociative state—a state in which he claims that he had no conscious control of his actions. Clearly, *mens rea* was the only issue confronting the jury.

Upon until very recently, the cases in this circuit involving *Sandstrom* violations in the context of insanity defenses have been few, leaving unsettled the issue of the impact of a credible insanity defense on a *Sandstrom* error.[1] Now however, that gap in *Sandstrom* jurisprudence has been filled. *Dix v. Kemp*, 763 F.2d 1207 (11th Cir.1985). In *Dix*, in keeping with the analytical framework articulated in *Davis*[5] and *McClesky*,[6] the court held that where defendant presents evidence of insanity, criminal intent is at issue rendering the *Sandstrom* error harmful. The Eleventh Circuit Court of Appeals' decision in *Dix* follows the conclusions reached by the Sixth and Ninth Circuits. *See Engle v. Koehler*, 707 F.2d 241 (6th Cir.1983), *aff'd by an equally divided court*, — U.S. —, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984) (per curiam); *Petition of Hamilton*, 721 F.2d 1189 (9th Cir.1983).[7]

**4.** For example in *Spencer v. Zant*, the defendant had entered a special plea of insanity. In rejecting Spencer's *Sandstrom* claim, the court noted that "[a]lthough Spencer alleges that his state of mind was at issue in the trial, the absence of any credible evidence in support of his insanity, combined with the testimony concerning the circumstances of his planning and execution of the escape, convinces us that Spencer's constitutional rights were not violated." *Spencer v. Zant*, 715 F.2d 1562, 1578 (11th Cir.1983). *Spencer*, however, can be distinguished on two grounds. First, although the jury did not accept Godfrey's insanity defense, Godfrey did present credible evidence in support of his defense through the testimony of Dr. Davis. Second, although not made explicit in the *Spencer* opinion, it appears that Spencer's insanity plea only went to his competence to stand trial and did not concern his state of mind at the time the crime took place.

An insanity defense was also raised in *Potts*. *Potts v. Zant*, 734 F.2d 526 (11th Cir.1984). However, because the *Potts* court did not find a *Sandstrom* violation, the issue of harm was never addressed.

**5.** *Davis v. Kemp*, 752 F.2d 1515 (11th Cir.1985).

**6.** *McClesky v. Kemp*, 753 F.2d 877 (11th Cir. 1985).

**7.** It should be noted that the approach approved of in *Dix, Engle*, and *Hamilton* is not completely in line with the philosophy espoused by the Supreme Court. *See Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). In *Johnson*, in dicta, the Court opined that

In presenting a defense such as alibi, insanity, or self-defense, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing the likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless.

Id. at 87, 103 S.Ct. 969, 978 (1983). Assuming that the Court was using "intentional" to distinguish voluntary from involuntary or accidental acts, within the context of the insanity defense, it would appear that the Court envisioned categorizing insanity defenses for *Sandstrom* purposes by the nature of the particular defense established by the accused. If one accepts the *Johnson* language at face value, in a murder case where the accused presents credible evidence that he believed the victim to be an extraterrestial preparing to destroy the planet, a *Sandstrom* error would be harmless since the accused would not be challenging the fact that he intentionally killed the decedent. In fact, if one followed the *Johnson* dicta to its natural conclusion, *Sandstrom* errors would rarely be harmful where the defendant pleads insanity, rather, harmfulness would exist only where the defense was predicated on diminished capacity or the like.

The Court points this out for two reasons. The first is to note that even if one adopts the *Johnson* point of view, the instant facts would still place Godfrey within that narrow band of insanity cases where the *Sandstrom* error was harmful. Godfrey's defense is much more akin to a claim of diminished capacity than insanity. Godfrey alleges that he lost conscious control of his actions and, in essence, was incapable of forming an intent. Perhaps Godfrey would have framed his defense in terms of diminished capacity but for the fact that the Georgia courts do not recognize that defense. *See Wallace v. State*, 248 Ga. 255, 282 S.E.2d 325 (1981). For a criticism of the failure of the Georgia courts to recognize this defense see Kurtz, *Criminal Offenses in Georgia*, (1980).

The second is to caution against use of the *Johnson* approach. Although it is something of an oversimplification, the defendant who raises the insanity defense is at root claiming that he acted without criminal intent. With good reason, courts treat *Sandstrom* errors on a charge by charge basis and are reluctant to engage in line-drawing.

As made clear in *Dix*, there is one more step in the *Sandstrom* analysis. It must be determined whether the evidence specifically related to intent was so overwhelming as to render the error harmless. *Dix v. Kemp supra* at 1211. Godfrey presented expert testimony in support of his defense through Dr. William Davis. Davis had treated Godfrey a number of times prior to the shootings and then examined him for this case pursuant to court order. In this Court's view, Davis offered credible testimony in Godfrey's behalf. The state produced two experts who each disputed Davis' diagnosis and conclusions. While the evidence in support of insanity cannot be said to be overwhelming, considering all of the circumstances involved here and the evidence specifically presented on intent, neither can it be said that the evidence of sanity was overwhelming. Therefore, the *Sandstrom* error was not harmless since the jury could have reached its verdict by relying on the illegal presumption. As a result, Godfrey's conviction must be set aside.

## IV. DOUBLE JEOPARDY

As noted earlier, Godfrey was sentenced to death, but the United States Supreme Court reversed this sentence and the case was remanded for further proceedings. *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1979). A resentencing proceeding was held in which the death sentence was again imposed. Godfrey asserts that the Double Jeopardy Clause barred the state from seeking imposition of the death sentence at resentencing.

Godfrey raises three arguments. First, the Supreme Court found that the evidence was legally insufficient to support Godfrey's original death sentence rendering improper any attempt to reimpose the death penalty. Second, the trial judge was required by statute to charge on all pertinent aggravating circumstances. Since he only charged under Ga.Code Ann. § 27–2534.1 (b)(7),[8] Godfrey was impliedly acquitted with respect to all other aggravating circumstances. Therefore, to resentence pursuant to subsection (b)(2)[9] constituted a double jeopardy violation. Third, by pronouncing at the first sentencing that only subsection (b)(7) was applicable, the state waived its right to seek the death penalty under any other subsection.

The state responds that the Supreme Court's ruling was not based on insufficiency of the evidence therefore removing double jeopardy considerations. In addition, the state asserts that under the Georgia death penalty scheme, statutory aggravating circumstances are not considered offenses and therefore do not fall within the ambit of double jeopardy principles. Furthermore, even if jeopardy does generally attach to the sentencing phase of a capital case in Georgia, the facts of this case are distinguishable from *Bullington*[10] and its progeny because here Godfrey has received the death sentence at his first sentencing.

In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1980), where the petitioner was sentenced to life imprisonment at his first trial but received the death penalty after his case was re-

---

But where a *Sandstrom* error has occurred and the accused has presented a credible insanity defense, for a reviewing court to speculate on the extent to which the unconstitutional instruction might have generated confusion in the mind of a juror based on the particular brand of insanity alleged by the accused, takes the process of judicial guess-work down a more twisted path than this Court prefers to travel.

**8.** This section provides for authorization of the death sentence where "the offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or

an aggravated battery to the victim." It is now found at O.C.G.A. § 17–10–30(b)(7).

**9.** This section provides for the authorization of the death sentence where the offense of murder, rape, armed robbery, or kidnapping was committed while the offender was engaged in the commission of another capital felony, or aggravated battery, or the offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree. *See* O.C.G.A. § 17–10–30(b)(2).

**10.** *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1980).

manded for retrial, the Supreme Court held that jeopardy attached to sentencing where the capital sentencing procedure required the jury to find beyond a reasonable doubt the applicability of at least one statutory aggravating circumstance. Neither the Georgia Supreme Court nor the Eleventh Circuit Court of Appeals has fully embraced the *Bullington* decision with respect to Georgia's death penalty statute. Both courts have held that a jury's findings on statutory aggravating circumstances are not the equivalent of a jury verdict on guilt or innocence. *Green v. Zant,* 738 F.2d 1529, 1141 (1984); *Zant v. Redd,* 249 Ga. 211, 290 S.E.2d 36 (1982), *cert. denied,* 463 U.S. 1213, 103 S.Ct. 3552, 77 L.Ed.2d 1398 (1983).

In its most recent pronouncement on the subject of the death penalty and double jeopardy, however, the Eleventh Circuit Court of Appeals distinguished both *Green* and *Redd. Young v. Kemp,* 760 F.2d 1097 (11th Cir.1985).[11] In *Young* the court found a violation of double jeopardy protections where the sole aggravating circumstance presented to the jury was not supported by legally sufficient evidence. *Id.*

The *Young* court held that where the death penalty was sought pursuant to only one aggravating circumstance and the evidence presented in connection with the circumstance was legally insufficient, "the death sentence itself fell for lack of legally sufficient evidence." *Id.* at 1107 n. 11 (1985). Jeopardy attached because such a situation was comparable to the verdict itself. *Id.*[12]

Furthermore, the *Young* decision held that the bar to reimposition of the death penalty was absolute. It applied not only to the aggravating circumstance presented the first time around but to any different aggravating circumstances as well. *Id.* at 1107 n. 12 (1985). Thus *Young* makes clear that where the death penalty initially fails for lack of legal sufficiency, no at-

tempt can be made to seek a second sentence of death.

The circumstances of Godfrey's case bring it squarely within the ambit of *Young.* At Godfrey's first trial, the prosecutor made clear that the only aggravating factor applicable to the case was subsection (b)(7). That was the only aggravating circumstance considered by the jury, and the only one considered by the United States Supreme Court. If that ground failed for lack of evidence, then the Double Jeopardy Clause prohibits Godfrey's being resentenced to death.

■ Therefore, the issue to determine is whether the United States Supreme Court's decision in *Godfrey* rested on the grounds of constitutional insufficiency of the evidence. The state argues vigorously that Godfrey's death sentence was struck down solely because the Georgia Supreme Court did not meet its obligation to independently review Godfrey's case to ensure that subsection (b)(7) was not applied in an unconstitutional manner. The Court disagrees.

From the standpoint of death penalty jurisprudence, the legal significance of the *Godfrey* decision rests on the Supreme Court's unwillingness to allow the Georgia Supreme Court to abdicate its statutory role of reviewing the constitutionality of individual death sentences, and its holding that a death sentence predicated solely on the finding that a murder was outrageous, wantonly vile, and inhuman can not stand because the words themselves provide no safeguards against totally arbitrary imposition of the death sentence. *See Burger v. Zant,* 718 F.2d 979 (11th Cir.1983). For the purposes of assessing Godfrey's double jeopardy claim, however, the relevant inquiry is why the Supreme Court determined that the trial record demanded a reversal of Godfrey's death sentence. In this regard, the Court wrote that:

---

11. *Young* lays to rest the state's attempt to distinguish *Bullington* on the grounds that Godfrey received the death penalty at his first sentencing.

12. *Green* and *Redd* were distinguished on the grounds that several aggravating circumstances were presented to the jury in those cases.

No claim was made, and nothing in the record before us suggests, that the petitioner committed an aggravated battery upon his wife or mother-in-law or, in fact, caused either of them to suffer any physical injury preceding their deaths. Moreover, in the trial court, the prosecutor repeatedly told the jury—and the trial judge wrote in his sentencing report—that the murders did not involve "torture." Nothing said on appeal by the Georgia Supreme Court indicates that it took a different view of the evidence. The circumstances of this case, therefore, do not satisfy the criteria laid out by the Georgia Supreme Court itself in the *Harris* and *Blake* cases.... The petitioner's crimes cannot be said to have reflected a consciousness materially more "depraved" than that of any person guilty of murder. His victims were killed instantaneously. They were members of his family who were causing him extreme emotional trauma. Shortly after the killings, he acknowledged his responsibility and the heinous nature of his crimes. These factors certainly did not remove the criminality from the petitioner's acts. But, as was said in *Gardner v. Florida*, 430 U.S. 349, 358 [97 S.Ct. 1197, 1204, 51 L.Ed.2d 393] it "is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion."

That cannot be said here. There is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not. Accordingly, the judgment of the Georgia Supreme Court insofar as it leaves standing the petitioner's death sentences is reversed, and the case is remanded to that court for further proceedings.

*Godfrey v. Georgia*, 446 U.S. 420, 432–33, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1979).

Despite the gloss that both the state and the Georgia Supreme Court[13] attempt to put on the *Godfrey* opinion, the above-quoted language leaves no question but that the Court found the record lacking in evidence to support a finding beyond a reasonable doubt that Godfrey's crime was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.[11]

The state had its opportunity to force Godfrey to undergo the most severe test that exists in our legal system: standing trial for one's life. Having weathered the crucible once, Godfrey should not be put to the test again.

Therefore, should the state choose to try Godfrey again, it may not seek to reimpose the death penalty.[15]

## V. THE PSYCHIATRIC EXAMINATION AND SUBSEQUENT ADMISSION OF PSYCHIATRIC EXAMINATION

On February 14, 1978, the trial judge granted Godfrey's motion for a psychiatric evaluation.[16] Included in the judge's order was a requirement that Godfrey undergo a psychiatric evaluation to be used by the state. This examination was conducted within twenty-four hours of the order. Godfrey's lawyer received no notice of the scheduled evaluation much less an opportunity to consult with Godfrey. One of the physicians who examined Godfrey testified for the state at the guilt-innocence phase of Godfrey's first trial and at his resentencing trial.

---

**13.** *See Godfrey v. State*, 248 Ga. 616, 618, 284 S.E.2d 422 (1981).

**14.** *See Johnson v. Kemp*, 759 F.2d 1503, 1509 (11th Cir.1985).

**15.** Because the Court finds a constitutional insufficiency of evidence to support Godfrey's initial death sentence, there is no need to address petitioner's two other arguments. Also, Godfrey

has raised additional enumerations of error based on other double jeopardy-related claims. The Court sees no merit to these additional claims including the claim of prosecutorial vindictiveness.

**16.** The record is unclear as to when this motion was made.

*Estelle v. Smith* is the seminal case on the issues of self-incrimination and right to counsel in the context of state ordered psychiatric examinations. *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In *Smith* the court found an abridgment of these rights where the defendant was ordered to be examined for competency to stand trial. Smith had not injected the issue of his sanity into the case nor was his attorney given notice prior to the examination. The psychiatrist, Dr. Grigsby, appeared as a witness at the sentencing trial and testified as to Smith's propensity for future dangerousness.

On the question of Smith's Fifth Amendment rights, the Court held that, "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id.* at 468, 101 S.Ct. at 1875.

The Court also found a Sixth Amendment violation. After deeming the psychiatric evaluation to be a "critical stage" of the proceedings, the Court found that Smith had the right to assistance of counsel in formulating his approach to the examination. *Id.* at 470, 101 S.Ct. at 1876.

■ While Godfrey was compelled to undergo a psychiatric evaluation, there is a critical distinction between Godfrey's case and those, which like *Smith,* found a violation of the accused's Fifth Amendment rights. *See e.g. White v. Estelle,* 720 F.2d 415 (5th Cir.1983). The distinction is that Godfrey placed his sanity in issue. He both made clear that he was going to raise the defense of insanity and he requested that the state pay for him to be examined by a psychiatrist to further this defense.

The difference was recognized in *Smith* itself where the Court opined that, "When a defendant asserts the insanity defense and introduces supporting psychiatric testi-mony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." *Id.* 451 U.S. at 465, 101 S.Ct. at 1874 (1981). Although different circuit courts have offered varying explanations for why no violation of the Fifth Amendment privilege occurs where the accused is compelled to undergo evaluation by the state after pleading insanity, and the state uses the examiner as a witness to rebut the defense, the results have been uniform.[17] Accordingly, the Court finds no Fifth Amendment violation.

Godfrey's Sixth Amendment claim contains two components. He alleges that his constitutional rights were violated both by the fact that his counsel was not present at the examination and because his attorney received no notice that the examination was going to take place.

■ The Court is not aware of any decisions holding that an individual has the constitutional right to have his attorney present at a psychiatric examination. In its opinion in *Smith,* the Fifth Circuit Court of Appeals, relying on *Cohen,*[18] specifically denied the existence of such a right. *Smith v. Estelle,* 602 F.2d 694, 708 (5th Cir.1979). The Supreme Court took note of this ruling and did not indicate disapproval. *Estelle v. Smith,* 451 U.S. 454, 470 n. 14, 101 S.Ct. 1866, 1876 n. 14, 68 L.Ed.2d 359 (1981). Subsequent decisions have reiterated this viewpoint. *See Gholson v. Estelle,* 675 F.2d 734, 743 n. 10 (5th Cir.1982). Therefore the Court finds no Sixth Amendment violation due to counsel's absence from the examination itself.

■ The lack of notice and of an opportunity to consult, however, raise serious questions. In *Smith,* the Fifth Circuit addressed the extent to which the accused in a capital case is handicapped by his failure to receive assistance from counsel prior to a psychiatric examination. *Smith supra* at 708. Likewise, the Supreme Court framed

---

**17.** For a thorough discussion of this issue see *United States v. Byers,* 740 F.2d 1104 (D.C.Cir. 1984).

**18.** *United States v. Cohen,* 530 F.2d 43 (5th Cir. 1976).

the Sixth Amendment issue in terms of prior opportunity to consult. *Estelle v. Smith*, 451 U.S. 454 n. 14, 101 S.Ct. 1866 n. 14, 68 L.Ed.2d 359 (1980).

Few cases have dealt with the Sixth Amendment issue in the context of a defendant who has raised the insanity defense and therefore forfeited his Fifth Amendment rights. Clearly, it is an easier matter to find a harmful Sixth Amendment violation based on lack of assistance of counsel where it has already been determined that an accused's privilege against self-incrimination has been abridged. It can be argued that the same considerations that enter into the Fifth Amendment analysis apply to the Sixth Amendment as well: namely, that the defendant who raises the insanity defense either waives his right to or is in less need of assistance of counsel before being examined by the state's psychiatrist. This notion, however, was laid to rest in a recent Ninth Circuit opinion. *United States v. Garcia*, 739 F.2d 440 (8th Cir.1984). Garcia was arrested for illegally entering the country. His defense was insanity. He was represented by counsel, but was examined under court order without any notice being given to his attorney. In addressing the Sixth Amendment issue the court stated:

> A defendant facing such an exam must make decisions with significant legal consequences and is in obvious need of counsel. He may wish to refuse to submit to the government examination and risk exclusion of his own expert testimony at trial, and rely instead on lay testimony to establish insanity. A defendant may need advice regarding what sort of questions he should expect, the need to cooperate, and the possible ramifications of his answers.

(citations omitted). *Id.* at 442.[19] In other words, the defendant's interests in assistance of counsel are the same regardless of whether the accused is pursuing an insanity defense.[20]

The state claims that Godfrey was represented by counsel at the time the order requiring the examination was issued. Implicit in the state's argument is the premise that by virtue of having signalled his intent to raise an insanity defense, Godfrey's lawyer should have known that the state would examine Godfrey and therefore counsel should have been alerted to the necessity of preparing Godfrey for such an examination. In view of the fact that Godfrey was examined by the state before his attorney was even aware that the motion for Godfrey's own examination had been granted, the Court is unwilling to say that any real opportunity for consultation occurred.

Accordingly, the conviction and resentencing must be vacated as a result of the

---

19. In Godfrey's state habeas proceedings his trial counsel testified as follows:

Q. Did you have an opportunity to speak to Mr. Godfrey between the Court hearing and when he was taken to the Milledgeville Hospital?
A. No.
Q. Had you planned to speak with him and discuss with him certain legal rights?
A. Oh, yes. I definately would have whether he was going to go to Atlanta or particularly go to Milledgeville.
Q. Some of the things you would have discussed with him would have been advice you would have given him concerning privileges, the scope of his responses or other legal issues that may arise when he was there?
A. Yes, that would have been part of it.
Q. And he was taken before you had an opportunity to do so, isn't that right?
A. Yes.
Q. In fact, you were not even notified that he was being taken to Milledgeville until after he had left?
A. Right.

20. This precise issue has never been addressed in this circuit, but both the *Spivey* and *Cape* decisions contain language suggesting that the court would find such a right if faced squarely with the issue. *Spivey v. Zant*, 661 F.2d 464 (5th Cir. Unit B 1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Cape v. Francis*, 741 F.2d 1287 (11th Cir.1984).

It should be noted that one circuit has found no Sixth Amendment violation under similar circumstances. *United States v. Byers*, 740 F.2d 1104 (D.C.Cir.1984). In *Byers* the court held that the psychiatric examination did not constitute a "critical stage" of the case. As far as the Court is aware, this view has not been followed elsewhere.

violation of petitioner's Sixth Amendment rights.

## VI. COMPOSITION OF THE GRAND AND TRAVERSE JURIES

Godfrey challenges the composition of the grand and traverse juries. He alleges unconstitutional underrepresentation of blacks and women and that this underrepresentation stems from a suspect jury-selection process. The state offers no evidence in rebuttal of Godfrey's claims, but simply asserts that any challenges were not made in a timely fashion and are therefore deemed waived under Georgia law.

■■■ It is well settled that an accused has a Sixth Amendment right to have a jury venire represent a fair cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The equal protection implications of discriminatory jury selection are equally well established. *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). The elements of a prima facie claim for either are virtually identical. *Davis v. Kemp,* 721 F.2d 1478, 1482 (11th Cir.1982), *aff'd on rehearing on other grounds,* 752 F.2d 1515 (11th Cir.1985) (en banc), *petition for cert. filed,* 37 CrL 4063 (1985).[21]

In *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979) the Court established the test for making out a prima facie case:

> the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation

is due to systematic exclusion of the group in the jury-selection process.

■■■ The failure of the defendant to establish any one of these elements negates his claim. *United States v. Pepe,* 747 F.2d 632 (11th Cir.1984). Here, defendant has shown the disparity in representation of women and blacks [22] as opposed to white males to be at levels that might well satisfy the second element of a prima facie test. In order to prove his case, however, Godfrey has relied on the comparative disparity standard. Petitioner claims that this method is both the most commonly employed and reliable one to show underrepresentation, but this circuit has eschewed the use of this method of analysis. *Pepe supra* at 649. In *Pepe,* noting the distortion that may occur as a result of reliance on comparative disparity, the court stated that "[t]o determine whether the representation was fair and reasonable, we are only concerned with the 'absolute disparity' produced by the selection process." *Id.* See also *United States v. Maskeny,* 609 F.2d 183, 190 (5th Cir.1980). Accordingly, the Court finds that petitioner has failed to carry his burden.[23]

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises a host of claims alleging ineffective assistance of counsel. He claims his counsel's performance was deficient in the following respects: (1) failure to renew a motion for a change of venue, (2) failure to conduct an adequate voir dire, (3) failure to object to the admission of certain testimony at the guilt-innocence phase of the trial, (4) failure to object to portion's of the charge, (5) failure to object to remarks made by the prosecutor in his closing arguments at both phases of the

---

**21.** The *Davis* court pointed out that the two analyses differ only in the manner in which a prima facie case may be rebutted. *Davis v. Kemp,* 721 F.2d 1478, 1482 n. 6 (11th Cir.1982). Here, where the state's rebuttal has nothing to do with the substance of the challenge, this difference is irrelevant.

**22.** Both of these groups have been found distinctive for these purposes. *Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1879); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

**23.** Because the claim fails on substantive grounds, it is unnecessary to consider the waiver issue.

first trial, (6) failure to file a motion to record all proceedings, (7) failure to investigate, develop and present evidence of mitigating circumstances, (8) failure to establish whether Dr. Carl Smith had *Mirandized* Godfrey prior to evaluating him, (9) failure to file a timely challenge to the composition of the grand jury, and (10) failure to challenge the array of prospective jurors from which the juries which convicted and sentenced petitioner were chosen.[21]

██ Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there is a two-pronged test against which claims of ineffective assistance of counsel are measured. In order to succeed on such a claim petitioner must demonstrate that counsel's performance was deficient to the extent that it can be deemed he was not functioning as a "counsel" for Sixth Amendment purposes. *Griffin v. Wainwright,* 760 F.2d 1505 (11th Cir.1985). Second, petitioner must show a reasonable probability that but for the questioned conduct, the outcome of his trial would have been different. *Adams v. Wainwright,* 764 F.2d 1356 (11th Cir.1985).

██ Keeping these tenets in mind, the Court turns to Godfrey's specific claims of ineffective assistance. Insofar as change of venue is concerned, as discussed later in this Order, the Court is rules that the motion for change of venue was properly denied. Petitioner has presented no evidence to suggest that a renewal of the motion would have yielded a different result. Therefore, the Court fails to see any error in this regard much less a harmful one.

Godfrey alleges several deficiencies connected with the voir dire. He claims his attorney failed to conduct an individually sequestered voir dire. In the first place,

counsel may have had perfectly good reasons for not requesting that the voir be done on this basis. In many instances, trial lawyers prefer not to signal the significance of a case at the outset by demanding the invocation of special procedures. Matters of strategy rarely rise to the level of ineffective assistance of counsel. *See Griffin v. Wainwright,* 760 F.2d 1505 (11th Cir.1985). Secondly, Godfrey offers no explanation for how this conduct prejudiced his case. The Court sees no grounds for believing that a jury selected through an individually selected voir dire would have been more likely to acquit Godfrey or find him not guilty by reason of insanity.

Godfrey complains that counsel failed to ask the jurors individually about their attitudes towards the insanity defense and the death penalty. The record shows that counsel did pursue these issues at length with the different panels of potential jurors. For reasons similar to those stated above, the Court finds no merit to this claim.

The same is true in regard to counsel's failure to question the jurors individually about whether they could consider imposing a life sentence if they found Godfrey guilty.

Godfrey asserts that the failure to excuse Mrs. John Dean for cause shows deficient conduct. Mrs. Dean did state that as the wife of a police officer she would tend to give more weight to the testimony of law enforcement officials. The record shows, however, that Godfrey's attorney had Mrs. Dean struck from the panel when her name was called. Perhaps counsel should have moved for her dismissal for cause. Perhaps he had good reasons for not doing so. Again, the Court refuses to find ineffective assistance of counsel on the basis of this type of tactical decision.[25]

---

24. In view of the Court's ruling on the issue of the composition of the grand and traverse juries, there is no need to explore this facet of Godfrey's ineffective assistance of counsel claim.

25. The same is true with respect to Godfrey's other claims of error for failure to strike for cause. For example, Mr. Billy Frasier did indicate that he might have difficulty acquitting on the basis of an insanity defense. On the other hand, he also stated that he personally knew Godfrey's brother. It is impossible for a reviewing court to meaningfully second-guess a lawyer's judgment as to where the sympathies of a juror such as Frasier might lie by the close of the evidence.

Furthermore, because Mrs. Dean was ultimately struck, had she been removed for cause, the only benefit to Godfrey would have been to have one additional strike. The Court hardly sees how it can be claimed that an additional strike would have been likely to produce a different verdict.

Godfrey complains of counsel's failure to object to certain testimony at trial. As discussed later in this Order, because the Court finds all of the complained of testimony admissible, counsel's failure to object did not constitute error. *See Adams v. Wainwright,* 764 F.2d 1356 (11th Cir.1985) (where underlying claim lacks merit, the failure to object cannot constitute ineffective assistance). Similarly, the Court does not determine the prosecutor's remarks to be improper, therefore petitioner's claims regarding counsel's failure to object are groundless.

The claim that counsel failed to object to the charge on intent is factually inaccurate.

Under the *Washington* standard, the Court deems frivolous Godfrey's claim that he did not receive effective assistance of counsel due to counsel's failure to file a motion to have all proceedings recorded.

Insofar as the failure to properly investigate, develop and present mitigating evidence at resentencing is concerned, the record reveals that counsel put up relatives, acquaintances, co-workers, and Dr. Davis to testify on Godfrey's behalf. In the proceedings before this Court, petitioner's claims in this regard consist of nothing more than bare conclusions. No showing is made of what more counsel should have done. In his state habeas petition Godfrey claimed that evidence concerning his behavior in prison should have been brought out to the jury. In fact, evidence of Godfrey's involvement with the jail ministry was testified to by Godfrey. Perhaps this aspect of his testimony would have been strengthened if offered through another witness, but petitioner points to no particular individual that counsel failed to contact or use

in this regard. Even if it can be said that counsel could have done more, the same can be said of almost every case that has ever been tried. It cannot be said that counsel's performance was constitutionally inadequate. *See Raulerson v. Wainwright,* 732 F.2d 803 (11th Cir.1984).

Concerning the testimony of the state's psychiatrist, Dr. Smith, because the Court has determined that Godfrey waived his Fifth Amendment protections by raising the insanity defense, no *Miranda* warnings were required. Since the underlying claim is without merit, counsel's failure to object does not constitute error.

## VII. DENIAL OF FAIR TRIAL AT GUILT/INNOCENCE PHASE

Petitioner cites to a number of events that took place at the guilt-innocence phase of his trial which allegedly deprived him of his right to a fair trial.

### A. Swearing in the Jury

The first is that the trial judge assigned to the prosecutor the task of swearing in the jury. At the time Godfrey was tried there was no prohibition against a District Attorney's administering the oath on voir dire. On July 1, 1979, however O.C.G.A. 15–12–132[26] took effect. Under this statute the oath must be administered by either the judge or the clerk of the court. Failure to adhere to this process constitutes fatal error. *Whisenhunt v. State,* 156 Ga.App. 583, 275 S.E.2d 82 (1980). Following enactment of this provision it was held that the administering of the oath by a prosecutor was presumptively prejudicial. *Benson v. State,* 150 Ga. App. 569, 258 S.E.2d 156 (1981).

Nonetheless, in the course of its habeas review of this case, the Georgia Supreme Court addressed and rejected this enumeration of error on the grounds that Godfrey's trial occurred over a year prior to the effective date of the act. *Godfrey v. Francis,* 251 Ga. 652, 308 S.E.2d 805 (1982). Clearly, presented with the opportunity to give this statute retrospective effect, the

---

**26.** Formerly Ga.Code Ann. § 59–704.1.

Georgia Supreme Court declined to do so. Given the general rule that statutes operate prospectively only,[27] in the absence of any legislative directive to the contrary, and in the face of the implicit interpretation given the statute by Georgia's highest court, this Court is unwilling to rule that Godfrey should benefit from the protections afforded by section 15–12–132.[28]

### B. Admission of Improper Testimony on Insanity

■ Although petitioner fails to point out his specific objections in this regard, the transcript indicates that the objection concerns lay persons offering opinions as to Godfrey's sanity. So long as a proper foundation is made, there is nothing wrong with a lay person offering an opinion in this regard. *See United States v. Dresser*, 542 F.2d 737 (8th Cir.1976); *Mims v. United States*, 375 F.2d 135 (5th Cir.1967). Having reviewed the trial record the Court sees no merit to this complaint.

### C. The Introduction of Photographs

Petitioner claims that the introduction into evidence of photographs of the crime scene deprived him of a fair trial. The Court disagrees.

■ It is well settled that habeas relief will be granted for evidentiary errors only where the error constitutes a denial of fundamental fairness. *O'Brien v. Wainwright*, 738 F.2d 1139 (11th Cir.1984). The improperly admitted evidence must be of a crucial nature to warrant the relief sought by Godfrey. *Jameson v. Wainwright*, 719 F.2d 1125 (11th Cir.1983).

■ Here, given the totality of the evidence, the Court does not regard this as such a close case that the photographs would have had a significant impact on the verdict.[29] Accordingly, assuming *arguen-*

*do* the photographs were improperly admitted, habeas relief is unwarranted.

### D. Hypothetical Question Asked the Expert

Godfrey complains that the prosecutor was permitted to ask a hypothetical question designed to inflame the jury.

Having examined the hypotheticals in question the Court sees no merit to Godfrey's contention. Furthermore, even if they were somewhat inflammatory, relief would be denied on the grounds stated above.

Likewise, the Court finds no error in the admission of the "bad acts" testimony.

### E. Prosecutor's Closing Remarks

■ The Court sees nothing in the prosecutor's closing argument during the guilt-innocence phase that adversely effected Godfrey's substantive rights. *See United States v. Alonzo*, 740 F.2d 862 (11th Cir. 1984).

### F. Failure to Charge on Manslaughter

■ In Georgia, "[i]n order to warrant a charge on voluntary manslaughter, the evidence must not only show an act of violent passion, but also some serious provocation sufficient to excite such passion in a reasonable person." *Swett v. State*, 242 Ga. 228, 230, 248 S.E.2d 629 (1978). Here, the Court gleans no evidence of such provocation nor does Godfrey point any out. Therefore, the Court finds that the trial court did not err in this respect.

## IX. DENIAL OF FAIR TRIAL AT RESENTENCING

The Court has considered the various claims raised by petitioner to the effect

---

**27.** *See Fordham v. Belcher Towing Co.*, 710 F.2d 709 (11th Cir.1983).

**28.** The Court is not entirely comfortable with this decision for two reasons. First, if it is presumptively prejudicial for a prosecutor to administer the oath, clearly, that prejudice existed just as much before the enactment of this provision as after. Second, on its face, the act

merely sets forth who should administer the oath. As such, it would appear to be a statute affecting procedure only, rendering it subject to retrospective application. *See United States v. Fernandez-Toledo*, 749 F.2d 703 (11th Cir.1985).

**29.** *But see Osborne v. Wainwright*, 720 F.2d 1237 (11th Cir.1983).

that he was denied a fair trial at his resentencing. In the first place, in view of the Court's holding on petitioner's main double jeopardy claim, the entire resentencing trial was constitutionally infirm. In reviewing what actually took place at the resentencing trial, however, the Court fails to see merit to the specific allegations of error raised except for the admissibility of the testimony of the psychiatric examiner. As previously discussed, admission of this testimony violated Godfrey's Sixth Amendment rights.

## X. FAILURE TO DETERMINE PETITIONER'S INDIGENT STATUS

■ Godfrey alleges that the trial court failed to make a timely determination regarding his status as an indigent. As a result, petitioner asserts that he was not appointed counsel in a timely fashion. This in turn prejudiced him in terms of the investigation and preparation of his case and prevented him from raising a timely challenge to the constitutionality of the composition of the grand jury.

As stated in respondent's brief, the state habeas court made the following factual findings in this regard:

Petitioner was arrested on September 20, 1977. Counsel testified that during the period September 20–22, 1977, he was notified by the district attorney that he and his partner had been appointed to represent Petitioner. Counsel did not consider his appointment as official because Petitioner could afford counsel. Counsel and his partner did not want to be retained by Petitioner because of the partner's long-standing representation of a local bank whose chairman was related to the victims.

At the hearing on the appointment of counsel, the trial court excused Counsel's partner for health reasons. (T., Dec. 22, 1977, p. 4). The bank conflict was discussed, and the trial court indicated that the bank relationship was not close enough to excuse Counsel. *Id.*, p. 7. As Petitioner had not been able to raise sufficient funds to hire another attorney, the trial court ordered Counsel to stay on the case until someone else was hired. *Id.*, pp. 8–11.

On February 1, 1978, Counsel filed a motion to determine the indigent status of Petitioner. (R.T. I, 14). The trial court determined that Petitioner was partially indigent and ordered him to pay a portion of his monthly pension to Counsel. (T., Feb. 6, 1978, pp. 5–11, 98–102). The remainder of Counsel's fee was to be paid by the county. *Id.*

Regarding Godfrey's claim in the most generous light, counsel was appointed on February 1, 1978 and Godfrey was tried on March 6, 1978. The Court does not consider this to be such a short time between appointment of counsel and trial that Godfrey's rights to due process and effective assistance of counsel were denied. *See generally United States v. Sahley*, 526 F.2d 913 (5th Cir., 1976). In actuality, although the record demonstrates the existence of some confusion over whether Godfrey's attorney would remain as his counsel, the record shows that Godfrey was receiving assistance of counsel within days of his arrest. Therefore, the Court finds Godfrey's claims of inadequate time to investigate and prepare to be without merit. If a waiver of the right to challenge the composition of the grand jury occurred as a result of an untimely motion, that waiver was not the product of the manner in which the trial court dealt with the issue of Godfrey's indigency. Godfrey's trial counsel asserts that no preindictment challenge was made because he was not aware that grand jury proceedings were taking place, however, the hearing record reflects that his lack of knowledge was due to lack of notice and not connected to any uncertainty on his part regarding his representation of Godfrey.

## XI. MIRANDA

Godfrey claims that the incriminating statements he made to the police were involuntarily given and thus inadmissible.

Godfrey made a number of incriminating statements to the police. His pre-arrest

statements, *inter alia,* include calling the police from the victims' trailer to tell them that he had killed his wife and mother-in-law. Upon the arrival of the police at the crime scene Godfrey told an officer, "They're dead. I killed them." A short time after being arrested and advised of his rights he stated, *Mack, I've done a hideous crime, but I've been thinking about it for eight years. I'd do it again.*"

There is no suggestion that any of these statements were the product of interrogation or coercion. If Godfrey's claim of inadmissibility has merit, it is on the grounds that he was insane or incompetent at the time the statements were made. *Corn v. Zant,* 708 F.2d 549, 567 (11th Cir. 1983) (confessions made during time of incompetency or insanity inadmissible).

In view of the Court's ruling on the *Sandstrom* issue, it is unnecessary at this time to determine whether Godfrey's statements should be deemed inadmissible due to his mental status.[30] The Court notes, however, that at Godfrey's trial no *Jackson v. Denno* hearing was held to evaluate the voluntariness of his statements. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Should the state reprosecute Godfrey, a pretrial hearing should be held to determine the admissibility of the challenged statements.

## XII. PROPORTIONALITY

Petitioner contests the adequacy of the proportionality review conducted by the Georgia Supreme Court. Godfrey contends (1) that the Court articulated its review in terms so vague that it defies meaningful review, (2) that the other cases relief upon by the Court are, for a variety of reasons, dissimilar to the facts of his case, and (3) that some of the opinions cited by the Court specifically distinguish Godfrey's to bolster the use of the death penalty for the petitioners in those cases.

The standard employed by a federal habeas court in assessing the proportionality review of the state supreme court was succinctly stated in *Tucker v. Kemp,* 724 F.2d 882, 892 (11th Cir.1984), *rev'd on rehearing on other grounds* 762 F.2d 1496 (11th Cir.1985) (en banc). The *Tucker* court stated that

[a] federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's findings of fact, their conclusion based on a review of similar cases, was supported by the evidence in similar cases.

We therefore decline the petitioner's invitation to conduct a de novo review of the proportionality of his sentence. Instead, we review the defendant's history, his sentence, and his crime merely to see whether the imposition of death in this case "shocks the conscience."

*Id.* at 895, *quoting Moore v. Balkom,* 716 F.2d 1511 (11th Cir.1983).[31]

■ Accordingly, this Court likewise declines to conduct as in-depth a review as Godfrey requests. Without stating its own view as to whether it considers Godfrey's case to be an appropriate one for the death penalty, the Court does not think that it shocks the conscience to impose the death sentence for the shotgun slayings of a man's wife and mother-in-law.

## XIII. ARBITRARY AND CAPRICIOUS

Godfrey argues that his death sentence was imposed in an arbitrary and capricious manner since the death penalty is rarely given in cases involving domestic murders. In support of this contention petitioner

---

**30.** Assuming that Godfrey's arguments on admissibility are accepted, the question remains as to whether the error was prejudicial. In view of its disposition of this issue the Court offers no answer except to note that at trial Godfrey freely conceded that he committed the shootings. Thus, the admission of a confession to the same would not appear to be prejudicial. On the other hand, the disputed statements might well be deemed prejudicial to the extent that they affect the quality of Godfrey's insanity defense.

**31.** As noted in *Tucker* a more stringent standard applies when a subsection (b)(7) is involved, but that is not the case here.

seeks to distinguish his case from others relied upon by the Georgia Supreme Court.

The Court sees this argument as little more than a different strain of Godfrey's other attack on the sentencing review. For the same reasons, the Court declines to engage in the sort of review requested by petitioner.

## XIV. GODFREY'S DEATH SENTENCE AND DISCRIMINATION

██ Based on a study conducted by Dr. David Baldus, Godfrey asserts that his death sentence was the product of discrimination based on race, sex and poverty. In a recent decision the Eleventh Circuit Court of Appeals conclusively rejected this claim. *McClesky v. Kemp*, 753 F.2d 877 (11th Cir.1985) (en banc).

## XV. FAILURE TO PROVIDE FUNDS

Petitioner contends that his constitutional rights were violated by the failure of the state habeas court to provide him with funds to pursue his claims. This contention has no merit. *Willis v. Zant*, 720 F.2d 1212 (11th Cir.1983).

## XVI. WITHERSPOON ISSUE AT RESENTENCING

██ Petitioner asserts that one juror, who did not unequivocally articulate opposition to capital punishment, was excused for cause. Having reviewed the transcript of this portion of the voir dire the Court finds no error in this regard. The juror in question expressed a refusal to impose the death sentence under any circumstances and was thus properly excluded under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *See McClesky v. Kemp*, 753 F.2d 877, 901 (11th Cir.1985).[32]

## XVII. CHANGE OF VENUE

██ Petitioner asserts error in the denial of his motion for a change of venue. As

articulated in *Johnson*, to establish error in the denial of a motion for change of venue, it must be shown that "jurors had a preconceived notion as to guilt or innocence that they cannot lay aside." *Johnson v. Kemp*, 759 F.2d 1503, 1510 (11th Cir.1985). Petitioner has not come forth with any evidence to meet this test. This enumeration of error is without merit.

## XVIII. ELECTROCUTION AS CRUEL AND UNUSUAL PUNISHMENT

██ Godfrey argues that death by electrocution constitutes cruel and unusual punishment. In this circuit, this argument has been raised numerous times and regularly rejected. *See e.g. Corn v. Zant*, 708 F.2d 549, 563 (11th Cir.1983).[33]

## XIX. THE TRIAL JUDGE'S INSTRUCTION ON MITIGATING CIRCUMSTANCES

██ Godfrey alleges that the instruction on mitigating circumstances failed to properly inform the jury on the role of mitigating circumstances and offered no guidance on the relationship between aggravating and mitigating circumstances.

The court gave the following instruction on mitigating circumstances:

> In all cases for which the death penalty may be authorized the law provides that the judge shall instruct the jury concerning mitigating circumstances or aggravating circumstances which the jury may consider in making the decision which will determine punishment to be imposed for each offense. Mitigating circumstances are those which do not constitute justification or excuse for the offense in question but which in fairness and in mercy may be considered as extenuating or reducing the degree of moral culpability. Aggravating circumstances are those which increase the guilt or enormity of the offense or add to its injurious consequences.

---

**32.** Petitioner asserts other errors relating to juror bias. They are without merit.

**33.** When last addressing this issue the circuit dismissed it as frivolous. *Johnson v. Kemp*, 759 F.2d 1503, 1510 (11th Cir.1985).

Although far from an ideal instruction, the circuit court has found an identical instruction to pass constitutional muster. *Johnson v. Kemp*, 759 F.2d 1503, 1509 (11th Cir.1985). In addition, as in *Johnson*, the court sufficiently informed the jury that even if it found an aggravating circumstance it could still recommend not to impose a death sentence.[34]

Accordingly, the Court finds no error in this regard.

## XX. TRIAL COURT'S FAILURE TO ENUMERATE SPECIFIC MITIGATING CIRCUMSTANCES

■■■ Petitioner suggests that it was incumbent upon the trial court to charge on specific mitigating circumstances. Once the trial court has sufficiently instructed the jury on the nature and function of mitigating circumstances, the Constitution does not require the trial court to charge on specific mitigating factors. *Tucker v. Kemp*, 724 F.2d 882, 892 (11th Cir.1984), *rev'd on rehearing on other grounds*, 762 F.2d 1496 (11th Cir.1985) (en banc).[35]

## XXI. O.C.G.A. § 17–10–30(b)(2)

### APPLIED IN AN OVERLY BROAD FASHION

Petitioner argues that subsection (b)(2) requires that the underlying felony be one other than murder. This construction of the statute has been specifically rejected by the Georgia Supreme Court. *See e.g. Romine v. State*, 251 Ga. 208, 209, 305 S.E.2d 93 (1983). The Court sees no merit to Godfrey's claim.

## XXII. CONCLUSION

The Court finds that Godfrey was unconstitutionally convicted due to the trial court's burden-shifting charge on intent and the violation of Godfrey's Sixth Amendment rights as a result of the admission of the testimony of the psychiatric examiner. His Sixth Amendment rights were similarly violated at resentencing. Moreover, the state's attempt to resentence Godfrey to death following the vacating of his first death sentence constituted a violation of double jeopardy principles. Therefore, the Court finds it appropriate to grant petitioner's writ on these grounds, but sees no merit to Godfrey's other enumerations of error.[36]

ACCORDINGLY, petitioner's request for habeas relief is GRANTED. Both his conviction and sentence are vacated. Should Godfrey be retried, the state may not seek the death penalty.

---

**34.** In this regard, the court charged the jury that:

> If you recommend the imposition of the sentence of death the court will sentence the defendant to death. If you should find beyond a reasonable doubt that the state has proved the existence in this case of the aggravating circumstances contended by the state and given you in charge by the court you would also be authorized to fix the punishment of the defendant at life imprisonment. This recommendation you may make for any reason that is satisfactory to you. If you do not find beyond a reasonable doubt that the state has proved the existence of the statutory aggravating circumstances which the court has charged you you would not be authorized to consider the penalty of death but fix punishment at life imprisonment and the court will then be required to sentence the defendant to life imprisonment.

**35.** In its en banc decision, the circuit reinstated the panel's decision on the issue of mitigating circumstances. *Tucker v. Zant*, 762 F.2d 1496 (11th Cir.1985) (en banc).

**36.** As discussed in the Order, the Court has declined to rule on several of Godfrey's claims.