**Johnnie L. JOHNSON,
Petitioner-Appellee,
Cross-Appellant,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center,
Respondent-Appellant, Cross-Appellee.**

**No. 84–8419.**

United States Court of Appeals,
Eleventh Circuit.

April 24, 1985.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant, cross-appellee.

Alice C. Stewart, Atlanta, Ga., for petitioner-appellee, cross-appellant.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

GODBOLD, Chief Judge:

Petitioner is a Georgia state prisoner convicted in 1975 and sentenced to death for murder, life imprisonment for rape, 20 years for kidnapping, and ten years for aggravated assault.[1] The district court,

---

1. The Georgia Supreme Court affirmed the convictions, *Johnson v. State*, 240 Ga. 649, 250 S.E.2d 394 (1978); denied a motion for extraordinary relief, *Johnson v. State*, 246 Ga. 474, 271 S.E.2d 789 (1980); and affirmed the denial of habeas corpus, *Johnson v. Zant*, 249 Ga. 812, 295

585 F.Supp. 1496, after an evidentiary hearing, granted the writ of habeas corpus on the ground of ineffective assistance of counsel at sentencing and denied relief on all other grounds. We affirm the denial of relief on the other grounds, vacate the judgment on the issue of ineffective counsel at sentencing, and remand for reconsideration of that issue under new standards handed down by the Supreme Court since the district court's decision.

### I. *Facts*

Petitioner Johnnie L. Johnson and co-perpetrator Jerry Sprouse approached two young women, Suzanne Edenfield, age 20, and Lynn Harrod, age 18, in Savannah, Georgia, after the women left a rock concert around 11 p.m. The two women agreed to smoke a joint (marijuana) with the men, and the four went to a park. After the four of them smoked two or three joints of marijuana and listened to a tape, the women set above to leave in their own car. Sprouse took a gun from the trunk of Johnson's car and forced the women into Johnson's car.[2] The men bound the women's hands behind them with wire. Suzanne gagged Lynn at the direction of the men. Johnson then gagged Suzanne and told her he would kill her if she made any noise.

Johnson drove to a wooded area outside of town. Once there he took Suzanne away from the car, disrobed her, and, the jury could find, raped her.[3] Sprouse removed Lynn's clothing and attempted to have intercourse with her in the back seat of the car, but was unable to complete the act. Johnson put some of Suzanne's clothes back on her and brought her back to the car. At Sprouse's direction Johnson again removed Suzanne's clothing. Both of the women, nude and still bound, were ordered by Johnson to stand at the side of the road. Johnson got in his car and turned it around, then, according to Lynn, got out of the car and stood beside Sprouse, who was behind and at almost point blank range from the women. Johnson testified, however, that he remained in the car after turning it around. Lynn heard a gunshot and saw Suzanne fall to the ground, fatally wounded. Suzanne was struck by two shots, one to the head, one to the chest. A pathologist testified that probably she lived about 15 minutes. Two shots struck Lynn, wounding her. Lynn did not see which of the two men held the gun and fired the shots. The district judge found that most likely Sprouse was the triggerman.

Johnson and Sprouse left the scene in the car, taking with them all of the women's clothing, which they threw out at various points. Lynn went to a nearby house, and police were called. The two men returned to town to wipe off fingerprints from the women's car but did not find it. They threw the gun in a river, took Johnson's car to South Carolina and burned it, and fled to South Dakota and then to Canada, in Sprouse's car. The burned car was traced to Johnson. He and Sprouse returned to South Carolina and were arrested.[4]

### II. *Excuse of Jurors for Cause*

▉ The district court considered the excusal for cause of veniremen Louis Bryan, Sam Coleman and Angus Henry[5] and held that interrogation of each at trial revealed that under no circumstances con-

---

S.E.2d 63, *cert. denied*, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983).

**2.** Johnson and Sprouse had stolen the pistol from the home of a girl they knew.

**3.** Johnson testified that he only attempted to rape her. However, Lynn testified that as soon as Suzanne was brought back to the car, she [Suzanne] told her she had been raped. Sperm was found in Suzanne's body.

**4.** Sprouse was tried and sentenced to death. The sentence was reversed for failure of the court to conduct a pre-sentence hearing,

*Sprouse v. State*, 242 Ga. 831, 252 S.E.2d 173 (1979). He was resentenced to death and that sentence reversed for errors in exclusion of evidence, *Sprouse v. State*, 250 Ga. 174, 296 S.E.2d 584 (1982). He has not been sentenced a third time.

**5.** The habeas petition questions the excusal of venireman Edward Green. But at the conclusion of his questioning the prosecution excused him by peremptory challenge. 5 Rec. 155.

ceivable at the time could he impose the death penalty on the defendant. We have examined the voir dire of these three persons, and it shows beyond question that the district court correctly held that the trial court properly excused them. All said unequivocally that they could not impose the death penalty. Georgia requires jurors to determine whether the death penalty is appropriate in the case. *Fleming v. State,* 240 Ga. 142, 240 S.E.2d 37 (1977). Under the law both before and after *Wainwright v. Witt,* —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the district court was correct. *See Adams v. Texas,* 448 U.S. 38, 44, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980) (a juror wholly unable even to consider the death penalty in assessing sentence should be excused).

### III. *Evidence of Other Misconduct*

The prosecution introduced over objection the testimony of witness Dan Lilly, a friend of Johnson's, that about a week and a half before the crimes in question Johnson had mentioned to him that he (Johnson) and Sprouse recently had seen a couple of girls coming in and out at different clubs, that he (Johnson) wanted to have sex with them and said "if they didn't want to do what he told them to, he was going to force them." Lilly described how at a later occasion Johnson waved a pistol owned by Lilly, saying that as long as he had the pistol he could do what he wanted to. Johnson acknowledged the incident concerning Lilly's pistol but stated that the conversation was limited to whether it was an antique.

Also introduced was testimony of Greg Yawn that a week and a half or two weeks before the crimes in question a magazine saleswoman came to Yawn's house while Johnson was there, and Johnson mentioned to Yawn possibly raping her and using the gun because he didn't want anyone to know about it. He invited Yawn to go along with him on the venture, but nothing further occurred.

The Supreme Court of Georgia pointed out that Johnson's participation in the crimes was undisputed and that the foregoing testimony of similar misconduct was highly relevant to show his "bent of mind" to commit rape and to voluntarily participate in kidnapping and raping the two victims. *Johnson,* 250 S.E.2d at 399.

■ The district court correctly rejected Johnson's contention that this prior misconduct evidence improperly put his character in evidence (and, inferentially, that it was so fundamentally unfair that it violated due process).

### IV. *Ineffective Counsel at Trial*

The district court considered an array of claims that counsel was ineffective at the guilt phase. Counsel had testified at the state habeas hearing. The court reviewed all of these claims under pre-*Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standards, and rejected all of them.

Defense counsel's trial strategy cannot be faulted. The tactical choice was to recognize that Johnson participated in the kidnapping but to claim that he only attempted to rape Suzanne and that he did not participate in the shooting. It was, in effect, a recognition that conviction on some charges, and a prison sentence, were inevitable, and an attempt to escape the death penalty. It is difficult to see that counsel had any other rational choice. Johnson never claimed to have an alibi. In view of the actual events—the women's car left in town, two nude and bound women abandoned on a remote road at night, both shot, one dead and the other alive and seeking help, the clothing of both taken away—the question was "who did it?" The surviving victim identified Johnson as driver of the car into which she and Suzanne had been forced and as a participant in the events that followed. She described the car, and her description tallied with Johnson's car found burned in South Carolina. She identified articles of their clothing found at a place distant from the scene.

Johnson took the stand and gave his version. His contention that he only attempted to rape Suzanne was hardly credible since sperm was found in her body. He claimed that Sprouse fired the shots while

he, Johnson, remained in the car after turning it around.

Petitioner's suggestion that counsel somehow should have developed additional evidence that Johnson did not pull the trigger [6] and that he only attempted to rape Suzanne is frivolous. The same is true of the contention that somehow he should have turned up evidence to rebut the testimony of Yawn and Lilly concerning Johnson's respective statements to them (about girls going in and out of night clubs and about the magazine saleswoman). Johnson's statements were made when no one else was present. Johnson acknowledged that the two conversations described by Yawn and Lilly occurred, and he could only seek to explain and soften his statements and the witnesses' descriptions of the circumstances. With respect to the pistol incident, the evidence is unclear on whether others were present when the pistol incident occurred, but in the overall context of the trial Lilly's testimony concerning Johnson's statement about the pistol could not have affected the result. The Johnson/Sprouse stolen pistol was, without dispute, in the trunk of Johnson's car, was seen in only Sprouse's hand during the crimes, and the district court found that Sprouse most likely fired the shots.

■ The district court did not err in rejecting petitioner's attack on the trial strategy and on counsel's investigation of issues relating to guilt.

## V. *The Enmund Issue*

Johnson raises a number of arguments under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), where the Supreme Court held that the Eighth Amendment barred the imposition of the death penalty "in the absence of proof that [the defendant] killed or attempted to kill, and regardless of whether [he] intended or contemplated that life be taken...." 458 U.S. at 801, 102 S.Ct. at 3379. We find no error.

*Enmund* was a felony murder case in which the Supreme Court examined the record to determine whether the Eighth Amendment permitted imposition of the death penalty on a defendant who aided and abetted a felony in the course of which the victims were killed. It concluded that the record did not justify a finding that Enmund had any intention of participating in or facilitating a murder, thus his level of culpability was not sufficient to justify imposition of the death penalty.

■ In the present case we are not required to make the *Enmund* examination. This is a malice murder case, in which the jury was instructed on malice murder. Its verdict necessarily established its finding of intent, in contrast to *Enmund.*[7] Compare *Ross v. Kemp,* 756 F.2d 1483 (11th Cir.1985) (en banc), which like *Enmund* was a felony murder case and in which this court en banc accordingly examined the record to find if the defendant's culpability satisfied the Eighth Amendment standards set out in *Enmund.*[8] *See also Drake v. Francis,* 727 F.2d 990, 997 (11th Cir.1984); *Henry v. Wainwright,* 721 F.2d 990, 995 (5th Cir.1983). *Green v. Zant,* 738 F.2d 1529, 1534 (11th Cir.1984), was a malice murder case in which the court examined the evidence to see if it supported the jury finding of guilt on the charge. This was unnecessary. The *Green* court itself rec-

**6.** The prosecution argued to the jury that it did not know who pulled the trigger, but that [assuming Johnson did not] there was no outcry or objection from him.

**7.** Whether under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), there is evidence sufficient to support the jury's conclusion is an issue not raised, and if it were we would reject it.

**8.** In *Fleming v. Kemp,* 748 F.2d 1435 (11th Cir. 1984), the indictment charged malice murder. However, one sentence in the jury instruction said that malice was not necessary where the killing occurred in the commission of a felony. The court relied upon another part of the jury instruction to conclude that the instruction as a whole actually did require intent. Thus an examination of the level of culpability pursuant to *Enmund* was not necessary. In what appears to have been an excess of caution the court did, however, examine the record, not to independently determine whether the *Enmund* level of culpability was present but to further satisfy itself that the jury's verdict necessarily embraced intent.

ognized that the case before it was "distinguishable from *Enmund* in that it was presented to the jury on a malice murder theory, rather than as felony murder." *Id.* at 1534.

Finally, the jury was not required to make a specific finding on the defendant's culpability. *Ross,* 756 F.2d at 1488.

### VI. *Use of Incriminating Statements*

■ Incriminating statements made by petitioner to police shortly after his arrest were not improperly used at trial. They were first referred to by defense counsel in an affirmative effort to establish Johnson's trial credibility. Johnson's counsel asked him whether initially he had told police that Sprouse forced him to participate in the crimes and whether he now acknowledged that these statements were false. Johnson responded that he knew that lying would not help him and "I am here to tell the truth." T. 213–14. Later the prosecution used one of the statements to bring out a single sentence uttered by defendant after he and Sprouse had left the area of the crimes, in which Johnson used a sexual expletive that, the prosecution said, demonstrated his attitude toward "the whole thing." The only objection was to relevance. The exact sequence and circumstances of the statements given by Johnson are not revealed. Assuming he did not by his earlier use of one of the statements for his own tactical purposes, waive objections to a statement being used to bring out the particular sexual expletive incident, the use made by the prosecution was in context relatively trivial. Johnson's actions spoke too loudly for a single expression of his post-event attitude to make much difference.

### VII. *Jury Instruction on Reasonable Doubt*

The court charge on reasonable doubt is set out in the margin.[9]

9. A reasonable doubt means just what it says. It is the doubt of a fair-minded,' impartial juror honestly seeking the truth. It's not an arbitrary or a capricious doubt, but is a doubt arising from a consideration of the evidence, from a conflict of the evidence or from a lack of evidence. It [sic] after giving considera-

Later the court repeated the requirement of proof beyond reasonable doubt with respect to rape (T. 252, 253) and murder (T. 254), and then said:

> I charge you that if you believe beyond a reasonable doubt that the defendant did, in this county, commit the crimes as charged of kidnapping, aggravated assault, rape, and murder, remembering again considering each separately as charged in separate Bills of Indictment, then you would be authorized to find the defendant guilty of that crime, considering each separately, the crime in each indictment. I charge you if you have a reasonable doubt that the defendant is guilty of the crimes charged, it would be your duty to give him the benefit of the doubt and find him not guilty.

T. 254–55. Petitioner contends that the phrase "If your minds are wavering, unsettled or unsatisfied, then that's the doubt of the law and you should acquit" eliminates the requirement of reasonable doubt because "wavering, unsettled or unsatisfied" were not defined and there was no instruction as to the degree required with respect to each of these terms to constitute reasonable doubt. The Georgia Supreme Court held the charge not erroneous, *Johnson,* 295 S.E.2d at 69, and the district court declined to disturb this conclusion. We find in the record no objection to the charge.

■ Considering the overall charge, in which reasonable doubt was referred to over and over again, there was no error of constitutional dimension.

### VIII. *Instruction to Jury on Mitigating Circumstances*

The trial court instructed the jury to determine whether the following aggravating circumstance, from O.C.G.A. 17–10–

tion to all the facts and circumstances of the case, your minds are wavering, unsettled, or unsatisfied, then that's the doubt of the law and you should acquit. If that doubt does not exist in your minds as to the guilt of the defendant, then you should convict.

T. 244–45.

30(b)(7), (c) (1982), was proved beyond reasonable doubt:

The offense of murder was outrageously or wantonly vile, horrible or inhuman [sic] in that it involved torture, depravity of mind, or aggravated battery to the victim.

It instructed that the jury was authorized to consider all facts and circumstances in mitigation, and it defined mitigating circumstances as:

Mitigating circumstances are those which do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability.

T. 267.

■ The Georgia Supreme Court held this instruction sufficient. The district court declined to disturb this conclusion, and we affirm its action. The instruction is minimal but passes constitutional muster under *Westbrook v. Zant*, 704 F.2d 1487, 1502 (11th Cir.1983), and *Tucker v. Zant*, 724 F.2d 882, 891 (11th Cir.1984).

Moreover, the instruction sufficiently informed the jury, pursuant to *Spivey v. Zant*, 661 F.2d 464 (5th Cir.), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982), that even if it found an aggravating circumstance it could still recommend not to impose death. The court instructed:

If you should find aggravating circumstance or circumstances and not recommend mercy, then the defendant will be put to death by electrocution. If you should find aggravating circumstances or circumstance and recommend mercy, the defendant will be sentenced to life in prison.

T. 269. This instruction, together with the earlier instructions on mitigating circumstances, sufficiently told the jury it could recommend life imprisonment even if it found an aggravating circumstance. *Westbrook*, 704 F.2d at 1502–03.

IX. *Vague and Overbroad Application of Georgia Statute on Aggravating Circumstances*

The only aggravating circumstance presented to the jury was subsection (b)(7) of the Georgia Statute, quoted above. The jury found, following the language of (b)(7):

We the jury, find the following statutory aggravating circumstances against the defendant: (a) The offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim. We fix the punishment of defendant at death.

2 Rec. 277.

The Georgia Supreme Court found:

The murder in this case was conducted in a methodical, execution-style fashion. The victim was disrobed at the time of the murder, and she had her hands tied behind her back. The murder itself was preceded by the rape of the victim. This clearly evinced a depravity of mind on the part of the defendant and involved torture to the victim. In both respects, it was outrageously and wantonly vile.

*Johnson*, 250 S.E.2d at 400. Other points not mentioned by the Georgia court were that Suzanne was threatened with death if she made outcry, taken to a remote spot and into the woods, stripped, partially reclothed after the rape, then stripped again by Johnson at Sprouse's instruction, and forced to stand nude at the side of the road.

■ In *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the Supreme Court held that a death sentence had been imposed under so broad and vague a construction of § (b)(7) as to violate the Eighth and Fourteenth Amendments. The Court found that the facts of *Godfrey*, including that the victims had been killed instantaneously, did not satisfy Georgia Supreme Court decisions narrowing the scope of § (b)(7). Here, however, the facts as recited by the Georgia Supreme Court, and as supplemented above, do satisfy a properly narrowed construc-

tion of § (b)(7). It is now well established under Georgia law that sexual abuse, including rape, may constitute "torture" for the purpose of finding an aggravating circumstance under § (b)(7). *Green v. Zant,* 738 F.2d 1529, 1540 (11th Cir.1984). A finding of aggravating circumstance under (b)(7) will therefore be upheld if there was a rape. *[Carzell] Moore v. Zant,* 722 F.2d 640, 642, 647–48 (11th Cir.1983), *Brooks v. Francis,* 716 F.2d 780, 783, 792–93 (11th Cir.1983). Subsection (b)(7) was not applied to Johnson in violation of his Eighth or Fourteenth Amendment rights.

### X. *Arbitrary and Capricious Application of the Death Penalty*

■ At the evidentiary hearing the district court declined to order funds made available to petitioner to secure a copy of the transcript in *McCleskey v. Zant,* 580 F.Supp. 338 (M.D.Ga.1984), in order that the statistical data in that case be offered into evidence.[10] Petitioner's request was made orally during the evidentiary hearing, and the court denied it on the ground that the matter had not previously been presented and that the request came too late. This was within its discretion.

### XI. *Denial of Change of Venue*

Johnson moved for change of venue with supporting newspaper extracts showing actions by county commissioners of the county of trial (Chatham County). The commissioners had adopted a resolution calling on judges of the county to impose maximum sentences permitted by law on persons convicted of crimes such as murder, armed robbery, rape, burglary and the sale of hard drugs, as the best deterrent to such crimes. Local judges and the bar association of Savannah, the principal city in the county, spoke unfavorably of the resolution. One commissioner then ran a newspaper ad asking citizens to send in a ballot expressing their views, and approximately 1400 persons indicated their support for the resolution and eight their opposition. The commissioner then publicly stated that "the will of the people is obvious."

On the venue issue, the Georgia Supreme Court examined the extensive voir dire of jurors, more than 300 pages, and, applying *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), found that the trial court did not abuse its discretion in denying the writ. *Johnson,* 250 S.E.2d at 399–400. The district court rejected the issue without discussion.

■ We find no error. Normally the denial of a motion for a change of venue is error only if the jurors had a preconceived notion as to the particular defendant's guilt or innocence that they cannot lay aside. *Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2035–2036, 44 L.Ed.2d 589 (1975); *Irvin,* 366 U.S. at 722–23, 81 S.Ct. at 1642; *Brooks v. Francis,* 716 F.2d at 786. Here, the pre-trial publicity did not focus on Johnson at all nor even the question of guilty or innocence.

### XII. *Other Issues*

■ In oral argument at the guilt phase the prosecutor stated, over objection, that "a dog, a dog, a male dog will not rape a female dog." T. 30. If error at all, it was not such as to violate constitutional limitations. The district court was correct in rejecting this point.

■ The contention that death by electrocution violates the Eighth Amendment is frivolous.

### XIII. *Ineffective Counsel at Sentencing*

The district court held counsel was ineffective at the sentencing phase, based upon the standards then in force in this circuit under *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (Unit B). The Supreme Court has since reversed that case, *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and established a higher threshold for ineffectiveness. We vacate the judgment on this issue and remand the case for reconsideration of the issue under the *Strickland* standards.

---

**10.** The district court has since decided the statistical issue in *McCleskey,* denying relief on the statistical issue, and its decision has been affirmed by this court. 753 F.2d 877 (1985).

AFFIRMED in part, VACATED in part and REMANDED.