**Johnnie L. JOHNSON, Petitioner,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent.**

Civ. A. No. CV 483–254.

United States District Court, S.D. Georgia, Savannah Division.

Aug. 8, 1985.

Alice C. Stewart, Atlanta, Ga., for petitioner.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

ALAIMO, Chief Judge.

The Eleventh Circuit Court of Appeals remanded this case with the instruction that this Court reconsider petitioner's claim that he received ineffective assistance from his attorney during his capital sentencing hearing. Johnson was sentenced to death at the conclusion of that hearing. Having applied the analysis prescribed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court continues in its original decision that Johnson received ineffective assistance at the hearing. Accordingly, a writ of *habeas corpus* as to Johnson's capital sentence shall be granted.

## FACTUAL BACKGROUND

On July 11, 1975, a Chatham County, Georgia, jury found petitioner, Johnnie Johnson, guilty of kidnapping, aggravated assault, rape and murder.[1] The offense of rape and murder then carried maximum sentences of death. Upon receipt of the guilty verdicts on the capital offenses, the trial court commenced a sentencing hearing, at the close of which the jury would give its recommendation for or against imposition of a death sentence against Johnson.

The penal laws then effective in Georgia permitted a jury to impose a death sentence for murder and rape only if the offense involved some aggravating circum-

stance. *See* Ga.Code Ann. § 26–3102 (1978), *recodified as* O.C.G.A. § 17–10–31 (1982). Even if a jury were to find an aggravating circumstance, it could reject the death penalty. *Id.* In consideration of these provisions of the law, the trial judge instructed Johnson's jury on the purpose of the presentence hearing, stating:

In this presentence hearing, counsel for both sides will have the right to present to the jury additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions, pleas of guilty or pleas of nolo contendere of the defendant, or *the absence of any such prior criminal convictions or pleas.*

Trial Transcript at 265 (hereinafter cited as "Trial") (emphasis supplied).[2]

Johnson's appointed counsel, William P. Franklin, Jr., elected to offer no evidence at the sentencing hearing. After its deliberation, the jury concluded that both the rape and the murder were committed under aggravating circumstances. The jury recommended life imprisonment for the rape charge and a sentence of death for the murder. These recommendations became the sentence of the court. The conviction and sentence were affirmed on appeal. *See Johnson v. State, supra* n. 1. Johnson's petition in state court for a writ of *habeas corpus* was denied. *See Johnson v. Zant,* 249 Ga. 812, 295 S.E.2d 63 (1982), *cert. denied,* 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983).

Having exhausted his state avenues of review, Johnson filed a petition for *habeas corpus* relief in this Court. The petition enumerated errors which allegedly tainted both the guilt and penalty phases of Johnson's trial. Relief was granted in part and denied in part. The Court found no error in the guilt stage of the trial and upheld Johnson's conviction. Having concluded,

1. Accounts of Johnson's offense and trial may be found in the Georgia Supreme Court's opinion upholding the conviction and sentence on appeal, *Johnson v. State,* 242 Ga. 649, 250 S.E.2d 394 (1978), and in the Orders of this Court and the Eleventh Circuit. *See Johnson v. Kemp,* 585 F.Supp. 1496 (S.D.Ga.1984), *aff'd in part, vacat-*

*ed in part and remanded,* 759 F.2d 1503 (11th Cir.1985).

2. The trial transcript was included as Volumes III and IV of the record presented to the Eleventh Circuit Court of Appeals in this case.

however, that Johnson received ineffective assistance of counsel at his presentence hearing, the Court granted the writ as to Johnson's capital sentence. Both the state and Johnson appealed the ruling.

The Eleventh Circuit agreed that Johnson's conviction should stand, and affirmed this Court's Order in this respect. However, subsequent to this Court's decision in *Johnson*, the Supreme Court, in *Strickland v. Washington, supra*, announced a new standard against which to test claims of ineffective assistance of counsel. The Eleventh Circuit, accordingly, vacated this Court's ruling that Johnson had received ineffective assistance at his sentencing hearing and remanded the case for reconsideration of that claim in light of *Strickland.*

## DISCUSSION

■ Consistent with the Remand Order, this Court's reasoning begins with the opinion in *Strickland v. Washington.* In *Strickland*, the Supreme Court established a two-prong analysis applicable to ineffective assistance claims. The test is succinctly set out in the *Strickland* opinion:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant

makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington, supra*, 466 U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. To satisfy this stringent standard, the petitioner must show both deficient representation and resultant prejudice.

### A. *Effectiveness*

Applying *Strickland*, the Court must first judge the quality of representation which petitioner received during his presentence hearing.[3] Neither the state nor the defense offered any evidence during this hearing. Johnson's attorney, William Franklin, stated that he investigated the possibility of calling witnesses in mitigation. As Franklin explained it, "[J]ohnson's recent history left a great deal to be desired. And quite frankly, no one told me of any one who would be very helpful or helpful at all." Transcript of State Habeas Corpus Hearing, held on January 7, 1982, at 42 (hereinafter cited as "State Hearing"). Rather than offering a case in mitigation, Franklin's strategy at sentencing was to attempt to convince the jury that Johnson was not the triggerman and that he did not deserve the death penalty. *Id.* at 50.

■ Franklin's performance at petitioner's sentencing hearing must be measured against an "objective standard of reasonableness." *Strickland v. Washington, supra*, 466 U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 693; *Tyler v. Kemp*, 755 F.2d 741, 744 (11th Cir.1985). Review under *Strickland* is highly deferential, and the Court must indulge a strong presumption that the challenged conduct was reason-

**3.** In reviewing counsel's effectiveness, the Court recognizes that it would be bound to follow any findings of historical fact made by the state *habeas* court unless those findings were clearly erroneous. *See Solomon v. Kemp*, 735 F.2d 395, 401 (11th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 940, 83 L.Ed.2d 952 (1985). The Butts County Superior Court Judge who denied Johnson's *habeas* petition made no findings of fact regarding Franklin's performance. Rather, the court made a summary finding that Johnson's "allegation of ineffectiveness is without merit." *Johnson v. Zant*, Habeas Corpus No. 5178 (Butts Co. Mar. 25, 1982) (exhibit 10 in *Johnson v. Kemp*). This finding of effectiveness is a mixed finding of fact and law, entitled to no presumption of correctness in this Court. *See Solomon v. Kemp, supra*, 735 F.2d at 401.

able. *Strickland v. Washington, supra,* 466 U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Counsel's actions must be judged in light of the circumstances which prevailed when the actions were taken, rather than from the distorting perspective of hindsight. *Id.* In sum, a court must sustain an attorney's action against a claim of ineffective assistance unless it determines that counsel acted outside the "wide range of professionally competent assistance." *Id.* 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■ Cases applying *Strickland* establish that it may be within the "wide range of professionally competent assistance" for a defense attorney to offer no mitigating evidence during the sentencing phase of a capital trial. *See Burger v. Kemp,* 753 F.2d 930 (11th Cir.1985); *Mitchell v. Kemp,* 762 F.2d 886 (11th Cir.1985). However, a strategy of silence may be adopted only after counsel has made a reasonable investigation for mitigating evidence or a reasonable decision that makes particular investigations unnecessary. *Strickland v. Washington, supra,* 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695; *Mitchell v. Kemp, supra,* 762 F.2d at 885.

■ The Court examines, first, the scope of Franklin's investigation for mitigation evidence. Franklin testified that his search for favorable evidence did not extend beyond his discussions with the defendant and the defendant's parents. State Hearing at 42. Yet, Johnnie Johnson stated in this Court that Franklin never asked him whether there were any witnesses who Johnson believed would be helpful. Transcript of Federal Habeas Corpus Hearing, held on December 9, 1983, at 78 (hereinafter cited as "Federal Hearing"). As Johnson put it, "[Franklin] was just interested in how much I had participated and to what degree." *Id.* at 77–78. Similarly, Johnson's mother, Lillian Veltre, and stepfather, Patrick Veltre, testified that Franklin neither requested their testimony nor asked them for names of persons who could testify as to their son's character. State Hearing at 12 & 21. Johnson sub-

mitted with his petition for *habeas corpus* relief affidavits from 19 individuals known to Johnson and his parents who stated that, had they been asked, they would have given favorable testimony regarding Johnson's character.

The "investigation" in which Johnson and the Veltres participated was hardly thorough. These persons consistently testified that Franklin never directed their attention to the need for mitigation evidence. The Eleventh Circuit addressed a similar situation in *Tyler v. Kemp, supra.* Defense counsel in *Tyler* offered no evidence during his client's capital sentencing hearing, despite his client's clean record and the extenuating circumstances which surrounded her crime. *Tyler's* family members testified afterwards that they had volunteered no mitigation evidence because counsel had not told them that evidence of a mitigating nature was needed. *Tyler v. Kemp, supra,* 755 F.2d at 744–45. In granting the writ on ineffective assistance grounds, the court faulted counsel for having failed to utilize the sole available sources of mitigating evidence—the defendant's family and former employer. *Id.* at 745. The same weakness characterizes Franklin's efforts to collect mitigating evidence in the case at bar. On the basis of testimony at the *habeas corpus* hearings, this Court concludes, as it did previously, that Franklin's investigation was not reasonably designed to uncover available mitigation evidence.

Such a limited search for evidence may pass muster under *Strickland* only if the limitations were reasonable in light of the circumstances which faced counsel. *Strickland v. Washington, supra,* 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. *Habeas* petitioner Mitchell, in *Mitchell v. Kemp, supra,* discouraged his attorney from conducting any background investigation which would involve the Mitchell family. In sustaining Mitchell's capital sentence against a claim of ineffective assistance, the Eleventh Circuit noted that a capital defendant's stated desire not to use character witnesses may limit the scope of

the investigation required. *Mitchell v. Kemp, supra,* 762 F.2d at 890. The Circuit Court has also approved an attorney's decision to abandon his investigation as fruitless where the defendant's family members, expected to provide mitigation evidence, prove to be indifferent or unwilling. *Id.; see also Messer v. Kemp,* 760 F.2d 1080, 1091 (11th Cir.1985), *and Fleming v. Kemp,* 748 F.2d 1435, 1450 (11th Cir.1984) (stating that the reluctance of potential character witnesses to testify may justify counsel's decision to call no mitigation witnesses).

Neither rationale explains counsel's actions in the case at bar. Johnnie Johnson did not dissuade his attorney from seeking mitigation evidence. Franklin described Johnson as a passive client who deferred to his attorney's judgments regarding trial strategy. State Hearing at 52. Johnson's parents and other family members were also willing, yet untapped sources for mitigation evidence.

■ An attorney may also limit his search for mitigation evidence on the basis of a reasonable decision that mitigation evidence would be ineffective or harmful. The *Strickland* Court concluded that a limited investigation was reasonable in that case because counsel had justifiably abandoned any hope of offsetting the "overwhelming" aggravating circumstances with evidence of his client's general good character. *Strickland v. Washington, supra,* 466 U.S. at ——, 104 S.Ct. at 2057, 2071, 80 L.Ed.2d at 684, 701. The Eleventh Circuit in *Burger v. Kemp, supra,* 753 F.2d at 936–40, considered that counsel had reasonably declined to offer mitigation evidence for fear of opening the door to adverse character evidence from the prosecution. *See also Mitchell v. Kemp, supra,* 762 F.2d at 890. These cases establish that, where an attorney determines that offering little or no mitigation evidence will be in his client's best interests, he acts reasonably in foreshortening the search for such evidence.

The rationale of *Strickland* and *Burger,* in which counsel adopted affirmative no-ev-idence strategies, do not apply to the case at bar. Unlike counsel in *Strickland,* Johnson's attorney made no decision, based on the weight of aggravating circumstances, that mitigation evidence would be ineffective. To the contrary, Franklin stated that he "certainly would have liked to have had some witnesses to present during both phases, especially the guilt phase." State Hearing at 49. "Unfortunately," Franklin complained, "there were none," save Johnson's parents. *Id.* This statement reveals that Franklin's decision to offer no mitigation evidence resulted not from strategy but from default. In light of his belief that mitigation evidence might have been helpful, Franklin was obliged to conduct a reasonable search for such evidence. This search would have uncovered the mitigation witnesses whose affidavits are before the Court. Only after so apprising himself of the available mitigation evidence could Franklin have decided to make or forego a case in mitigation.

Nor is there any indication that Franklin decided to forego a case in mitigation to prevent rebuttal evidence from the prosecution. *Johnson had no prior criminal record.* The other evidence which might have been offered in rebuttal, such as Johnson's drug use, had already been put before the jury during the state's guilt-stage presentation. *See Johnson v. Kemp, supra,* 585 F.Supp. at 1505. Franklin indicated during his state *habeas* testimony that he had wanted to avoid reiteration of the state's evidence against Johnson during the sentencing phase. State Hearing at 40. However, it is clear from a complete reading of Franklin's testimony that the perceived lack of favorable evidence, rather than the danger of rebuttal, prompted Franklin to be silent during Johnson's sentencing hearing.

Having for a second time thoroughly reviewed the record in this case, the Court discerns no reasonable explanation for counsel's near total failure to have sought evidence to offer in mitigation of Johnson's sentence. This error was aggravated by counsel's decision to ignore an important

piece of mitigation evidence—his client's theretofore unblemished criminal record. This Court previously recognized and continues to believe that a defendant's clean criminal record can be strong evidence in mitigation of sentence. *See Johnson v. Kemp, supra,* 585 F.Supp. 1502. Johnson's jury had been specifically instructed before the sentencing hearing that it could consider the defendant's prior criminal record, or lack thereof, as additional evidence in aggravation or mitigation of punishment. Trial at 265. Yet, it is unclear from Franklin's state testimony that he even investigated Johnson's criminal record. Possibly Franklin discovered his client's clean record but decided against offering this evidence during the sentencing hearing. Whatever the cause, the Court considers it error for counsel to have failed to put Johnson's clean record before the sentencing jury. *See Tyler v. Kemp, supra,* 755 F.2d at 745 (considering counsel's failure to put defendant's clean criminal record before the jury as element of ineffective assistance).

In conclusion, Franklin's performance during the sentencing portion of Johnson's capital trial fell "outside the wide range of professionally competent assistance." Counsel's cursory investigation for mitigation evidence ill prepared him to select a sound strategy for the sentencing hearing. Franklin's failure to have offered his client's clean criminal record in mitigation simply defies explanation. Perhaps this delict resulted from Franklin's inexperience; he had never, before the *Johnson* case, participated in a capital trial. *See* State Hearing at 27–29. The recent decisions granting writs of *habeas corpus* in *Tyler v. Kemp* and *King v. Strickland,* 748 F.2d 1462 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985), show that, in the trial of capital cases, inexperience often breeds error. *See Tyler v. Kemp, supra,* 755 F.2d at 746; *King v. Strickland, supra,* 748 F.2d at 1464. Whether caused by inexperience or by dereliction, Franklin's preparation for and performance during Johnson's sentencing hearing fell below the standard which

*Strickland* establishes for effective representation.

## B. *Prejudice*

■ Having concluded that counsel's performance in this case fell below the Constitution's standard for effective representation, the Court must next decide whether any prejudice resulted to the defendant. To satisfy *Strickland*'s prejudice prong, petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington, supra,* 466 U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. "A reasonable probability," *Strickland* explains, "is a probability sufficient to undermine confidence in the outcome [of the proceeding]." *Id.*

This element of the *Strickland* analysis places a difficult burden on the reviewing court. As Justice Marshall recognized in his *Strickland* dissent, "it is often very difficult to tell whether a defendant convicted after a trial in which he was ineffectively represented would have fared better if his lawyer had been competent." *Id.* 466 U.S. at ——, 104 S.Ct. at 2076, 80 L.Ed.2d at 708 (Marshall, J., dissenting). The Court must decide the strength of evidence which it only half knows. It must judge the probable effect of testimony without ever having seen the witnesses. It must then anticipate the case which might have been made in rebuttal. The Court has undertaken this task and concludes that petitioner has satisfied the *Strickland* prejudice requirement.

The potential gravity of counsel's error in this case becomes apparent when one considers the function of the sentencing phase of a capital trial. The Eleventh Circuit recently commented upon this, stating:

[O]ne of the key aspects of the penalty trial is that the sentence be individualized, *i.e.,* the jury's discretion should be focused on the particularized nature of the crime and the characteristics of the individual defendant. *Gregg v. Georgia,*

428 U.S. 153, 206, 96 S.Ct. 2909, 2940, 49 L.Ed.2d 859 (1976). In *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the court held that a defendant has the right to introduce virtually any evidence in mitigation at the penalty phase. The evolution of the nature of the penalty phase of a capital trial indicates the importance of the jury receiving adequate and accurate information regarding the defendant. Without that information, a jury cannot make the life/death decision in a rational and individualized manner.

*Tyler v. Kemp, supra,* 755 F.2d at 745. The strong language of *Tyler* suggests that prejudice might be presumed when an attorney's incompetent performance results in his failure to offer any mitigating evidence during a capital sentencing hearing. *See United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657, 667 (1984) ("There are ... circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."). Presuming prejudice in this case, as permitted by *United States v. Cronic,* is tempting in view of the gravity of counsel's error and the critical stage of the trial which the error affected. However, the Court declines to rely on such a presumption. *See Blake v. Kemp,* 758 F.2d 523, 533–34 (11th Cir.1985) (refusing to presume prejudice despite counsel's complete failure to prepare for his client's capital sentencing hearing).

■ A court's conclusion as to the probable effectiveness of proffered mitigation evidence must be based on the totality of circumstances surrounding the petitioner's participation in the crime and his claim for mitigation. *See Strickland v. Washington, supra,* 466 U.S. ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In *Strickland,* the defendant confessed to three gruesome murders. In challenging his capital sentence, the defendant faulted his counsel for having failed to offer mitigation witnesses who would have testified to the defendant's general good character and to the emotional stress which plagued defendant at the time of the crimes. The Supreme Court

found that defendant failed to satisfy his burden of proving prejudice, stating, "Given the overwhelming aggravating factors, there ... [was] no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances." *Id.,* 466 U.S. at ——, 104 S.Ct. at 2071, 80 L.Ed.2d at 701. Similarly, in *Messer v. Kemp, supra,* the defendant confessed to having brutally murdered his young niece. The Eleventh Circuit characterized the evidence of Messer's guilt, which included a confession to the police, as "overwhelming." *Messer v. Kemp, supra,* 760 F.2d at 1084. In concluding that no prejudice resulted from the limited case offered in mitigation of sentence, the court remarked that the proffered mitigation evidence "[did] not even begin to tip the balance of aggravating and mitigating factors in favor of Messer." *Id.* at 1091.

■ As *Strickland* and *Messer* indicate, the likelihood that prejudice will result from error at the sentencing phase of a capital trial depends largely on the strength of the state's evidence of guilt. This feature of the prejudice analysis was critical to the Eleventh Circuit's decision to vacate the capital sentence challenged in *King v. Strickland, supra.* The *King* court held that the petitioner had been prejudiced by a presentence presentation which included only one mitigation witness and a "weak" closing argument. *King v. Strickland, supra,* 748 F.2d at 1464. In distinguishing *Strickland v. Washington,* the Eleventh Circuit panel stated:

> *Washington* was a case of clear guilt based on confessions and pleas of guilt to three capital murder charges. King was convicted on circumstantial evidence which however strong leaves room for doubt that a skilled attorney might raise to a sufficient level that, though not enough to defeat conviction, might convince a jury and a court that the ultimate penalty should not be exacted, lest a mistake may have been made.

*Id.* The careful approach of *King* guides this Court because, as in *King*, circumstantial evidence established a most important element of the murder charge against Johnson—the element of intent.

The circumstantial evidence of Johnson's intent to murder Suzanne Edenfield was mixed.[4] The testimony of Johnson and Mary Lynn Harrod, the surviving victim, indicated that Jerry Sprouse, Johnson's co-indictee in this case, was the primary architect of the crime.[5] Johnson testified in his own defense to his fearful acquiescence in Sprouse's directions and to his ignorance of any plan to kill the girls. Harrod testified to no statements by Johnson which revealed his knowledge of any plan to commit murder. There was no evidence that Johnson held the gun at any time in the course of the evening. The testimony well-nigh conclusively showed that Sprouse, rather than Johnson, fired the shots which killed Edenfield and wounded Harrod. Finally, consistent testimony of Johnson and Harrod indicated that Johnson was under the influence of various drugs at the time of the offense.

This guilt-phase evidence threw into some doubt Johnson's intention to participate in Suzanne Edenfield's murder. It suggested that Johnson took instruction from Sprouse without full awareness of Sprouse's plan. It further indicated that Johnson's judgment and ability to affect the course of events had been diminished by drugs. This exculpating evidence was insufficient to convince the jury to acquit Johnson of the murder. Standing alone, it did not dissuade the jury from imposing a death sentence. However, the Court believes it reasonably probable that the death sentence could have been avoided had the exculpating evidence been corroborated with evidence of Johnson's good, nonviolent character and of his theretofore clean criminal record.

In its previous Order, this Court discussed the strength of the character evidence which petitioner has demonstrated was available in this case. *See Johnson v. Kemp, supra,* 585 F.Supp. at 1404–05. The 19 affidavits of would-be character witnesses portray Johnson as a person of good character and conduct, with no propensity for or history of violent behavior. Many of the affiants were aware of Johnson's drug problem. *See, e.g.,* affidavits of Paul Crawford, Mary Denise Dowart. These individuals, including friends and family, consistently stated that Johnson's involvement in this tragedy was so contrary to his natural character that it could only have resulted from his use of drugs.

The testimony of these witnesses at the sentencing phase would have aided the petitioner in two ways. Like any mitigating evidence, it would have softened the state's characterization of Johnson as a depraved killer. In doing this, the favorable evidence would have depicted the petitioner in a light which was hardly suggested by the guilt-phase evidence. *Cf. Celestine v. Blackburn,* 750 F.2d 353, 357 (5th Cir.1984) (no prejudice results where counsel omits during the sentencing phase evidence adequately developed during the guilt phase).

Moreover, the proffered mitigation evidence would have corroborated the exculpatory guilt-phase evidence and thereby made more plausible the inference that Johnson had no intention to participate in Suzanne Edenfield's murder. The character testimony would have given credence to

---

**4.** This quality of the evidence likely explains Franklin's statement that he was surprised by Johnson's having received a death sentence. *See* State Hearing at 52.

**5.** For his part, Sprouse was convicted of murder, kidnapping with bodily assault and two counts of aggravated assault. *See Sprouse v. State,* 242 Ga. 831, 252 S.E.2d 173 (1979). He received two death sentences, both of which were reversed on direct appeal. *See id.* On remand, a sentencing hearing was held, at the conclusion of which Sprouse was again sentenced to death. This sentence was also reversed on direct appeal. *See Sprouse v. State,* 250 Ga. 174, 296 S.E.2d 584 (1982). The Court has been informed that the surviving victim, Mary Lynn Harrod, now refuses to testify further in this matter. Federal Hearing at 99. Accordingly, it seems unlikely that the state will resentence the triggerman, Sprouse, who is currently serving a life sentence.

the evidence that Johnson's participation in this crime resulted from the distorting effects of drugs rather than from depravity of his character. Evidence of his clean criminal record and his good, nonviolent character would have supported the inference that Johnson was not a party to Sprouse's plan to commit this heinous murder. By bolstering the exculpatory evidence, the mitigation evidence would have created a discernable degree of additional doubt as to Johnson's culpability for the murder. The Court cannot say with confidence that this additional quantum of doubt would not have affected the sentence which petitioner received. *See King v. Strickland, supra,* 748 F.2d at 1464 ("Circumstantial evidence cases are always better candidates for penalty leniency than direct evidence convictions.").

Having considered the circumstances of Johnson's case—the evidence of his guilt and the mitigating evidence—the Court believes it reasonably probable that competent counsel could have combined the exculpatory evidence with favorable character evidence to produce an effective case for leniency.[6] Johnson has thus carried his burden under *Strickland v. Washington* of showing that prejudice resulted from his counsel's deficient performance.

CONCLUSION

Petitioner has satisfied both the performance and prejudice prongs of *Strickland v. Washington,* thereby demonstrating that he received ineffective assistance of counsel during his capital sentencing hearing. The petition for writ of *habeas corpus* as to Johnson's death sentence is, accordingly, GRANTED. His death sentence is vacated subject to a new sentencing hearing within a reasonable period of time in the manner provided for by O.C.G.A. §§ 17–10–30 to –44.

---

**6.** In reaching this determination, the Court considers that, where a jury cannot come to a unanimous decision to impose the death penalty, the judge must impose a sentence of life imprisonment. *Miller v. State,* 237 Ga. 557, 559,

229 S.E.2d 376 (1976). Thus, the outcome of Johnson's sentencing hearing would have been changed had counsel convinced one juror that the death sentence was not warranted.